**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-03456-RM-NYW

_____

LAURA HOPPER,

      Plaintiff,

v.

RE/MAX PROPERTIES, INC. a Colorado corporation, JEFF RYDER, JODY ROMNEY, and
AMY LASSEN, individuals,

      Defendants.

---

### Defendant RE/MAX Properties, Inc.'s Motion for Summary Judgment

---

Plaintiff Laura Hopper brought this action against RE/MAX Properties, Inc. (hereafter

"RMP"), Jeff Ryder, Amy Lassen, and Jody Romney asserting claims for gender discrimination,

retaliation, and intentional interference with contract.  The intentional interference with contract

claims were dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  As there

are no genuine issues of material fact on the remaining Title VII claims, Defendant RE/MAX

Properties, Inc. (hereafter "RMP"), pursuant to Fed. R. Civ. P. 56, respectfully moves for

summary judgment on Plaintiff's Amended Complaint.

### Introduction

Title VII's prohibitions on discrimination and retaliation only apply to claims brought by

an employee against her employer.  Plaintiff Laura Hopper claims she was a joint employee of

RMP and Jeff Ryder.  Generally, independent entities are treated as joint employers if the entities

share or co-determine the matters governing the essential terms and conditions of employment of

1

employees. Here, the undisputed facts establish that RMP was not Hopper's employer.  Jeff

Ryder was her employer, and accordingly, her Title VII claims against RMP fail.

Even if RMP is found to be Hopper's employer, RMP is still entitled to summary

judgment on her Title VII claims.  Hopper claims she was subjected to gender discrimination,

sexual harassment, and retaliation.  Her claims are premised on RMP's adoption of dress code,

but courts have consistently held that dress codes alone are not discriminatory.  *See Jespersen v.*

*Harrah's Operating Co., Inc*., 392 F.3d 1076, 1079 (9th Cir. 2004).  Throughout her

employment, Hopper regularly dressed in a manner that was unprofessional and not appropriate

for a business.  The complaints about her manner of dress and the attempts to get Hopper to dress

in a more professional or acceptable manner do not amount to discrimination or sexual

harassment.  Hopper's gender discrimination claim cannot survive summary judgment because

she cannot establish a prima facie case of gender discrimination.  The sexual harassment claim

fails because the harassment identified by Hopper did not occur because of her gender and was

not severe or pervasive enough to create a hostile work environment.

Hopper claims her employment was terminated in retaliation for opposing discrimination

and that RMP opposed her claim for unemployment insurance benefits as a further act of

retaliation.  Jeff Ryder terminated Hopper's employment because she impermissibly accessed his

personal email account.  Hopper's retaliation claim cannot survive summary judgment because

she cannot establish that her protected activity was the 'but-for' cause of the adverse actions she

claims to have suffered and that the stated reason for her termination is a pretext to cover up a

retaliatory motive.  Accordingly, summary judgment should enter in favor of RMP on all claims.

## Rule 56 Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). To avoid summary judgment, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)).

## Statement of Undisputed Material Facts

RMP's Statement of Undisputed Material Facts, in the form required by the Court's Civil Practice Standard IV.B.2.a.ii. is attached to this Motion.

## Argument

### I.   RE/MAX Properties, Inc. Was Not Hopper's Employer.

RMP was not Hopper's employer, and thus cannot be liable under Title VII for any of the claims she asserts.

Title VII prohibits unlawful employment practices by "an employer."  42 U.S.C. § 2000e-2(a). The statute defines "an employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees."  42 U.S.C. § 2000e(b).  An "employee" is "an individual employed by an employer." 42 U.S.C. § 2000e(f).  RMP does not dispute that it is an "employer" within the meaning of Title VII; however, RMP was not Ms. Hopper's employer.  In order to prove a prima facie case of "discrimination or retaliatory termination under Title VII, a

plaintiff must first prove the defendant was her employer. If a plaintiff cannot meet her burden to prove the defendant was her employer, her . . . discrimination and retaliatory termination claims necessarily fail." *Knitter v. Corvias Military Living*, LLC, 758 F.3d 1214, 1225 (10th Cir. 2014).

When there is more than one potential employer, "[t]he joint employer test is used to determine whether a plaintiff was an employee of two or more separate entities." *Park v. Fiserv Trust Co.*, 2010 U.S. Dist. LEXIS 129600, *6 (D. Colo. Sept. 30, 2010).

> Under the joint employer test, two entities are considered joint employers if they share or co-determine those matters governing the essential terms and conditions of employment. Both entities are employers if they both exercise significant control over the same employees. An independent entity with sufficient control over the terms and conditions of employment of a worker formally employed by another is a joint employer within the scope of Title VII.

*Knitter*, 758 F.3d at 1226 (quotations omitted). "In other words, courts look to whether both entities exercise significant control over the same employees." *Bristol v. Board of County Comm'rs of County of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002) (quotation omitted). Factors for courts to consider in determining if two entities are joint employers include the following: the ability to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; the day-to-day supervision of employees, including employee discipline; and control of employee records, including payroll, insurance, taxes and the like. *See Knitter*, 758 F.3d at 1226.

The undisputed facts establish that the Jeff Ryder Team, not RMP, was Hopper's employer. Jeff Ryder is an independent contractor real estate broker affiliated with RMP, and runs the Jeff Ryder Team which consists of four or five real estate brokers. Statement of Undisputed Material Facts ("SUMF") at ¶¶ 2,8. Ryder set the conditions of Hopper's employment. Ryder placed the advertisement seeking to hire an assistant, and Ryder, without

the involvement or input of anyone from RMP, hired Hopper to be the assistant for the Jeff Ryder Team.  SUMF at ¶¶ 4-6.  Ryder's assistant trained Hopper.  SUMF at ¶ 7.  Jeff Ryder and the real estate agents on the Jeff Ryder Team assigned tasks to Hopper, and she only performed her job duties for the Jeff Ryder Team.  SUMF at ¶¶ 10-11.  Hopper did not make any reports about the work she did to RMP's broker manager Tony Clement, and according to Ryder, Tony Clement did not have the authority to discipline Hopper.  SUMF at ¶¶ 12, 28.  Ryder determined Hopper's work hours, the location where she performed her duties, and counseled his assistants about their behavior..  SUMF at ¶¶ 18-19, 24.

Hopper did not negotiate her salary with RMP, and she was never paid by RMP; only Jeff Ryder's company paid her for the work she did for the Jeff Ryder Team.  SUMF at ¶¶ 13-15.  Jeff Ryder's company, not RMP, provided Hopper with a W-2 in connection with her work for the Jeff Ryder Team.  SUMF at ¶ 16.  RMP did not provide Hopper with any benefits, but she did negotiate with Jeff Ryder to be paid bonuses and to receive paid vacation.  SUMF at ¶¶ 14-17.  Hopper reported her hours to Ryder, submitted requests for time off directly to him, and received approval for time off from him; she never requested time off from RMP.  SUMF at ¶¶21-22.  When Hopper had complaints about issues in the office, she brought those complaints to Ryder, not RMP.  SUMF at ¶ 23.

Ryder, not RMP, made the decision to terminate Hopper's employment.  SUMF at ¶ 76.  When Hopper's employment ended, she attempted to file a claim for unemployment insurance benefits against RMP, but the Colorado Department of Labor and Employment would not let her submit a claim against RMP as it had not provided her with a Form W-2.  Hopper Dep. at 89:21-90:3.

Under *Knitter's* joint employment test the ability to promulgate work rules is a factor for consideration in determining if a joint employment relationship exists. Here, RMP did promulgate work rules, notably a dress code that applied to agents' assistants, and a requirement of professionalism. SUMF at ¶¶ 26-27. Although RMP established those work rules, *Knitter* instructs that instituting a dress code and threatening to terminate for a violation of that dress code is insufficient, without more, to create an employment relationship. *Knitter*, 758 F.3d at 1230 (absent any actual discipline, the threat of discipline for "wearing shorts" does not create a joint employment relationship. While RMP did institute a dress code and other rules that were applicable to Hopper, the undisputed facts here establish that Ryder told Hopper to ignore the RMP rules. Hopper testified that Ryder told her she could ignore the RMP code of conduct, that she did not need to sign the dress code or Assistant's Rules of Conduct, and that she did not need to follow any of those rules. SUMF at ¶¶ 29-31. In addition to telling Hopper that she could ignore the rules established by RMP, Ryder also told Hopper that she could ignore a complaint about inappropriate dress in the workplace that was discussed with her by Linda Richie from RMP's legal department. SUMF at ¶¶ 32-35. Ryder's directives to Hopper to ignore the RMP carried over to the dress code violation warnings that Tony Clement issued to Hopper. On both instances that Tony Clement issued warnings to Hopper in August 2013, he requested that she change into clothing that complied with the RMP dress code. SUMF at ¶¶ 50, 52. Hopper was never sent home to change in response to either warning. SUMF at ¶ 53. Moreover, it is clear that Hopper paid no heed to the RMP dress code, as on at least four occasions after it was implemented in early August 2013, she wore clothing that was not in compliance with the dress code. SUMF at ¶¶ 50-52, 57; *see also* Ex. W, Romney Aff. at ¶¶ 4-6.

For the ability to promulgate work rules to be a factor in considering if a joint employment relationship exists, those work rules must have some meaning and must be enforceable. Here the rules were ignored at Ryder's direction, and were not enforceable by RMP. While Tony Clement may have issued warnings to Hopper for violations of the dress code, those warnings and any implied or explicit threats of discipline were hollow, as Tony Clement did not have the authority to discipline Hopper for the violations. *Knitter*, 758 F.3d at 1230-1231. Ryder's unilateral determination that Hopper need not follow the rules established by RMP indicates that he, and not RMP, was Hopper's employer.

Finally, the most important consideration in determining which entity has control over the terms and conditions of an employment relationship "is the right to terminate it under certain circumstances…" *Knitter*, 758 F.3d at 1226 (quoting *Bristol*, 312 F.3d at 1219). The undisputed facts establish that RMP did not have the authority to terminate Hopper's employment. SUMF at ¶ 25. RMP's owner Joe Clement and Ryder agree that Hopper was Ryder's employee and that RMP did not have the authority to terminate her employment. As RMP could not terminate Hopper's employment, RMP is not her employer.

It is undisputed that Ryder set the conditions of Hopper's employment, including her compensation, benefits, and hours. Ryder was responsible for the day-to-day supervision of Hopper, and maintained the authority to discipline her, even going so far as ignoring a complaint about Hopper from RMP's legal department. The work rules set by RMP were meaningless, as Ryder instructed Hopper to ignore them. Finally, and most importantly, Ryder reserved the sole right to terminate Hopper's employment. As there are no genuine issues of material fact that could establish a joint employment relationship, the Court can determine that Ryder was Hopper's employer and enter summary judgment in favor of RMP on all claims.

## II. Hopper Cannot Establish a Claim for Gender Discrimination.

As noted above in section I, RMP was not Hopper's employer, and that fact precludes Hopper from establishing a claim of gender discrimination under Title VII.  However, even if the Court determines that RMP was Hopper's employer, she still cannot establish a viable claim of gender discrimination.

### a.   The Implementation of a Dress Code was Not Discriminatory.

It has long been established that enforcement of a dress code, without evidence of specific disparate treatment or disparate impact, does not violate Title VII.  Over forty years ago, the D.C. Circuit noted that:

> Perhaps no facet of business life is more important than a company's place in public estimation. That the image created by its employees dealing with the public when on company assignment affects its relations is so well known that we may take judicial notice of an employer's proper desire to achieve favorable acceptance. Good grooming regulations reflect a company's policy in our highly competitive business environment. Reasonable requirements in furtherance of that policy are an aspect of managerial responsibility.

*Fagan v. National Cash Register Co.*, 481 F.2d 1115, 1124-1125 (D.C. Cir. 1973).

The dress code that Hopper objects to does not violate Title VII.  It applies equally to men and women, and does not require women to dress in a manner that could give rise to claim of discrimination.  SUMF at ¶ 48, Ex. N, Aug. 2013 Dress Code.  Hopper does not state a claim for gender discrimination based upon her allegations that the dress code was unfairly enforced with regard to her clothing choices.  As Hopper has not alleged that the dress code imposed a greater burden on women than men, any claim that the dress code itself was discriminatory fails. *Jespersen v. Harrah's Operating Co., Inc.*, 392 F.3d 1076, 1079 (9th Cir. 2004) (Title VII does not apply to grooming and dress standards, unless the standards impose unequal burdens on one sex).

**b. Hopper Cannot Establish a Prima Facie Case of Gender Discrimination.**

An employee can prove illegal discrimination under Title VII through indirect or circumstantial evidence by using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

> Under *McDonnell Douglas,* the plaintiff carries the initial burden of establishing a prima facie case of [ ] discrimination. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. If the defendant makes this showing, the burden then shifts back to the plaintiff to show that the defendant's proffered justification is pretextual.

*Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006) (citations omitted).

A plaintiff makes out a prima facie case upon showing: (1) that plaintiff belongs to a protected class; (2) that she suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1181 (10th Cir. 2002) (*citing Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000)). It is undisputed that Ms. Hopper belongs to a protected class. Beyond that, she cannot establish a prima facie case of discrimination.

Hopper cannot identify any competent evidence to show that she suffered an adverse employment action. The written warnings that Ms. Hopper received from Tony Clement for violating the dress code do not constitute adverse actions. *DeWalt v. Meredith Corp.,* 288 Fed. Appx. 484, 493 (10th Cir. 2008) ("[a] written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status.") *quoting Haynes v. Level 3 Communs.,* 456 F.3d 1215, 1224 (10th Cir. 2006). Likewise, any verbal reprimands Hopper may have received do not constitute adverse actions. *Id. citing Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 533 (10th Cir. 1998). There were no consequences from the written

warnings or any verbal reprimands Hopper may have received.  She continued working, and suffered no adverse consequences as a result of any written warning; in fact, she was never even sent home to change out of the offending clothes.  SUMF at ¶ 53.

Even if Hopper could establish that she suffered an adverse action, she cannot establish the third element of the prima facie case—an inference that warnings or reprimands were issued under discriminatory circumstances.  Ms. Hopper's complaint that the dress code was implemented and directed solely at her does not state a claim for gender discrimination, as she cannot establish that the purpose of the dress code was to discriminate against her on the basis of her gender.  As attempts at enforcing the dress code were not limited to Hopper, and others who violated it received warnings, the dress code could not have been directed solely at Hopper.  SUMF at ¶¶ 49, 54-55.  Nor is there any evidence that the dress code was applied in a discriminatory fashion.  For example, Ms. Hopper cannot identify any similarly situated males who were treated differently under similar circumstances.  In the absence of evidence to support a prima facie case, Hopper's gender discrimination claim fails.

### c.  RE/MAX Properties, Inc. Had a Legitimate Reason to Implement the Dress Code, and Hopper Cannot Establish that Reason was a Pretext.

RMP implemented a dress code in order to project a professional image.  SUMF at ¶48.  RMP had received a number of complaints about the manner in which agents' assistants were dressing, from other agents and outside parties. SUMF at ¶¶ 33, 36, 38, 41, 43-44.  Establishing a professional image is clearly a legitimate reason for implementing a dress code.  *Fagan v. National Cash Register Co.*, 481 F.2d at 1124-1125.  In order to prevail at this stage of the *McDonnell-Douglas* balancing, Hopper must show evidence that RMP's stated concerns with its professional image are pretextual.  Hopper has no evidence to show RMP's explanation is a

pretext.  Accordingly, RMP is entitled to summary judgment on Hopper's gender discrimination claim.

**III. Hopper Was Not Subjected to Sexual Harassment.**

In addition to the gender discrimination claim, Hopper asserts a claim that she was subjected to hostile work environment sexual harassment.[1]  Again, because RMP was not Hopper's employer, the hostile work environment claim fails; but, even in the event that Court finds RMP was Hopper's employer, summary judgment is appropriate on the hostile work environment claim.

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, prohibits an employer from "discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  A hostile work environment based on an employee's gender violates Title VII.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993); *Chavez v. New Mexico*, 397 F.3d 826, 831-32 (10th Cir. 2005).

In order to prove the existence of a hostile work environment, an employee must show "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Sandoval v. Boulder Reg'l Communs. Ctr.*, 388 F.3d 1312, 1327 (10th Cir. 2004).  The totality of the circumstances must be examined in order to determine whether the environment is hostile, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Jones v. Barnhart*,

---

[1] RMP disputes that the Amended Complaint adequately pled a claim for sexual harassment.

349 F.3d 1260, 1268 (10th Cir. 2003).  A plaintiff must also produce evidence leading to the inference that she was targeted for harassment because of her gender.  *Id.*

Hopper claims that she was subjected to sexual harassment by Joe Clement, Tony Clement, Amy Lassen, and Jody Romney.  SUMF at ¶ 60.  Hopper claims that Joe Clement's sexual harassment of her consisted of him: failing to reprimand or discipline anyone; and failing to investigate the July 12, 2013 meeting or Tony Clement measuring her leg.  SUMF at ¶ 61.  She claims that Tony Clement's sexual harassment of her consisted of him: (1) measuring her skirt; (2) making a comment in an email that she looked like a stripper; (3) making a comment about her shoes being the kind of shoes only places where women are naked would wear; (4) making a comment about needing to tape his nipples; (5) his failure to stop other people from making comments about Hopper by email or to her face; (6) an email Tony Clement received from David Smith; (7) making Hopper go to a gas station so Jeff Johnson could check her outfit; (8) suggesting Hopper go shopping with Jeff Johnson's wife; (9) recommending that Hopper be fired; and (10) putting Hopper under monitoring or surveillance.  SUMF at ¶ 64.  Hopper's claims of sexual harassment against Amy Lassen and Jody Romney arise out of the July 12, 2013 meeting she had with them.  She accuses Amy Lassen of (1) Lifting up her shirt; (2) telling Hopper she couldn't wear her trench coat; (3) telling Hopper she had emotional problems because she dressed provocatively; (4) telling Hopper she couldn't think, breathe, or dress sexy; (5) telling Hopper she couldn't take photos; (6) accusing Hopper of threatening her; and (7) writing the 2013 dress code.  SUMF at ¶ 66.  Hopper accuses Jody Romney of (1) lifting her skirt up during the July 12, 2013 meeting and telling Hopper that she can't wear her skirts like that and asking 'what would happen if I sat in front of Joe like this?'; (2) telling Hopper during the July 12, 2013 meeting to tape her nipples or buy padded bras; (3) not letting Hopper wear

really tight sweaters; (4) monitoring Hopper; and (5) changing a password on SkySlope without telling Hopper.  SUMF at ¶ 68.  These allegations do not constitute actionable sexual harassment.

### a.  Hopper Failed to Exhaust Her Administrative Remedies.

The Tenth Circuit Court of Appeals has repeatedly held that exhaustion of administrative remedies is a jurisdictional prerequisite to pursuing a Title VII action in federal court. *Simms v. Oklahoma ex. Rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999); *Schroder v. Runyon*, 1 F.Supp.2d 1272, 1276-77 (D.Kan. 1998). See also, e.g., *Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997); *Knopp v. Magaw*, 9 F.3d 1478, 1479 (10th Cir. 1993); *Khader v. Aspin*, 1 F.3d 968, 970 (10th Cir. 1993).  "Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399, (10th Cir. 1996). *See also Sampson v. Civiletti*, 632 F.2d 860, 862 (10th Cir. 1980).  As a consequence of this long-standing rule, the charge filed with the administrative agency limits the scope of a subsequent civil action. *Rubidoux* at 1480, citing *Parker v. Housing Authority of Kansas*, 92-3136 (10th Cir. 1993). "Each discrete incident of [discriminatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003), *citing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-13, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

The failure of a plaintiff in a Title VII action to exhaust administrative remedies deprives the court of jurisdiction over the subject matter of the plaintiff's Title VII claim, and the court has no authority or power to act on it. *Schroder*, 1 F.Supp. at 1276. "Title VII's requirement that the plaintiff exhaust the administrative remedies provided by the statute is jurisdictional; that is,

a court is obligated to enforce the requirement even if the defendant has overlooked it." *Bullard v. Sercon Corp*. 846, F.2d 463, 468 (7th Cir. 1988); *Ingels v. Thiokol Corp*., 42 F.3d 616, 625 (10th Cir. 1994) (claims in federal district court are limited by the scope of the charge of discrimination in a CCRD/EEOC charge); *Martin v. Nannie & Newborns, Inc.*, 3 F.3d 1410, 1416 n. 7 (10th Cir. 1993).

Hopper's Charge does not contain any allegations that she was subjected to a hostile work environment because of her gender. Ex. U, Charge of Discrimination. Hopper does not identify any evidence from which it could be concluded that she believed she was subjected to a hostile work environment. Nor is there any evidence that Hopper was subjected to any type of treatment in the workplace that could objectively or subjectively be viewed as hostile work environment harassment. Therefore, Hopper failed to exhaust administrative remedies, and summary judgment is appropriate. *See Martinez*, 347 F.3d at 1210.

**b.  The Conduct Hopper Complains of Did Not Occur Because of Her Gender.**

Summary judgment is also appropriate on Hopper's hostile work environment claim because none of the conduct she complains of was directed at her because of her gender. In a hostile work environment case, "[t]he plaintiff must produce evidence that she was the object of harassment because of her gender." *Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998). "To determine whether discrimination occurred because of sex, evidence must exist from which the fact finder could infer the plaintiff was harassed because she is a woman." *Chavez v. Thomas & Betts Corp*., 396 F.3d 1088, 1096 (10th Cir. 2005).

Hopper cannot establish that the acts she complains of occurred because of her gender. Hopper Dep. at 192:4-7 ("Q.  All of those things that you just listed that Jody Romney did, why do you think she did these things to you?  A.  I don't know."); 192:8-16 ("Q.  And Amy, we had

14

a list of things.  Lifting up her skirt, telling you you couldn't wear your coat, telling you you had

emotional problems because you dressed provocatively, telling you you couldn't think, breathe,

or dress sexy, taking photos, the comment about you threatening her, creating the dress code.

Why do you think Amy Lassen did all those things to you?  A.  I don't know."); 192:17-22 ("Q.

Joe Clement, you listed his failure to reprimand or discipline anyone or investigate the ambush

meeting or Tony Clement measuring your leg, allowing this harassment to continue.  Why do

you believe that Joe Clement did these things to you?  A.  I have no idea."); 192:23-193:9 ("Q.

And for Tony, we have a list that included measuring your skirt, making a comment that you

looked like a stripper, his comment about your shoes, his comment about his nipples, his failure

to stop other people from making comments to you by e-mail or to your face, his e-mail from

David Smith, making you go to the gas station so Jeff Johnson could check out your outfit,

suggesting you go shopping with Jeff Johnson's wife, recommending you be fired, putting you

under monitoring or surveillance.  Why do you think Tony Clement did all those things to you?

A.  I don't know.").  Similar testimony has been determined to be a concession that the

complained of incidents did not occur because of a protected status.  *Harp v. Dep't of Human

Servs*., 932 F. Supp. 2d 1217, 1233 (D. Colo. 2013) (treating deposition testimony which failed

to identify race as the cause of alleged mistreatment as a concession that incidents were not

related to race.).  As Hopper cannot offer any evidence to show that the complained of conduct

occurred because of her gender, summary judgment is appropriate on the hostile work

environment claim.

       **c.   The Conduct Hopper Complains of is Not Severe or Pervasive.**

      Hopper admitted that between the meeting with Linda Richie in September 2012 and the

discussion with Ted Bachara in June 2013, "things were quiet."  Hopper Dep. 152:13-20.  Thus,

the period of time covering her hostile work environment claim is from June 2013 through her

termination on September 25, 2013.  During that period, the only things Hopper complains of are

the July 12, 2013 meeting with Amy Lassen and Jody Romney, some isolated comments from

Tony Clement, and Tony Clement measuring Hopper's skirt.  Notably, Hopper was not aware of

any of the emailed complaints made about her until after her termination. SUMF at ¶¶ 37, 42, 45.

Accordingly, those complaints cannot be viewed as part of the alleged hostile work environment.

*Hirase-Doi v. U.S. West Communs., Inc*., 61 F.3d 777, 782-783 (10th Cir. 1995) (plaintiff could

"only rely on evidence relating to harassment of which she was aware during the time that she

was allegedly subject to a hostile work environment.") *abrogated on other grounds by*

*Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) and

*Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

Taking Hopper at her word, the incidents she described are not sufficiently severe or

pervasive to alter her terms of employment and create an abusive working environment. See

*Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257 (10th Cir. 1998) (supervisor's

behavior, including giving hotel clerks the impression that he was sharing a room with one

female employee, asking another female employee if women have wet dreams, comparing the

shape of a roof of building to the shape of a woman's breasts, and taking a female employee to

Hooters restaurant, was not sufficiently severe or pervasive to constitute a hostile work

environment); *Sprague v. Thorn Americas, Inc*., 129 F.3d 1355, 1366 (10th Cir. 1997) (four

sexually-related comments and one instance of looking down the plaintiff's dress by her

supervisor over a sixteen-month period of time not sufficiently severe or pervasive to be

actionable harassment). *See also Duncan v. General Motors Corp*., 300 F.3d 928, 934-35 (8th

Cir. 2002) (female employee who rejected sexual advances of male coworker was not sexually

harassed when he touched her inappropriately several times, showed her a nude woman screen saver on his computer, displayed a planter in his office with a man having a cactus protrude out his zipper, twice showed her a pacifier shaped like a penis and created a document called the "man-hater's club of America" and made her the president and CEO of the fictitious club).

Accordingly, Plaintiff cannot establish actionable harassment, and summary judgment should be granted on this claim.

### IV. RE/MAX Properties, Inc. Did Not Retaliate Against Hopper.

Hopper contends that she was subject to two retaliatory acts by RMP—termination and opposition to her claim for unemployment benefits.  Summary judgment is appropriate on both claims, both because RMP was not Hopper's employer and because Hopper cannot identify a factual dispute that overcomes summary judgment.

A prima facie case of retaliation requires Hopper to show: (1) that she engaged in protected opposition to discrimination; (2) that she suffered an adverse employment action; and, (3) that a causal connection existed between the protected activity and the adverse employment action. *Ward v. Jewell*, 772 F.3d 1199, 1202–03 (10th Cir. 2014).  If Hopper can establish a prima facie case of retaliation, RMP must articulate a legitimate, nondiscriminatory reason for the materially adverse action. *See O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001). Hopper must then demonstrate that the employer's proffered reason for the adverse action is pretextual. *Id.*

Hopper cannot establish the first element of the prima facie case as her complaints were not statutorily protected activity because she did not have a "reasonable, good faith belief that [s]he was opposing discrimination prohibited by Title VII." *Held v. Ferrellgas, Inc.*, No. 11-3344 (10th Cir. Dec. 7, 2012), at *5-7 (unpublished) (*citing Crumpacker v. Kan. Dep't of Human*

*Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003) (rejecting "any interpretation of Title VII which would permit plaintiffs to maintain retaliation claims based on an unreasonable good-faith belief that the underlying conduct violated Title VII"); Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (noting that, in order to be protected under Title VII, an employee's activity must be based upon her "reasonable good faith belief" the conduct or practices about which she was complaining were unlawful).

Hopper knew that RMP's dress code served a legitimate purpose and did not discriminate against women. Her complaint was based on the belief that the dress code had been implemented solely for her, despite the fact that it had been distributed to all RMP agents and assistants, and was applicable to all assistants without regard to gender. SUMF at ¶ 48. Moreover, Hopper continued to dress in a manner that was in flagrant disregard of the dress code. SUMF at ¶¶ 50-52, 57; Romney Aff. at ¶ 6. The unreasonableness of Hopper's complaints about her compensation preclude a legal conclusion that they are activity protected under Title VII. Breeden, 532 U.S. at 271.

Hopper also cannot establish a prima facie case of retaliation because she cannot establish that she was subjected to any adverse actions by RMP. While termination is an adverse action, it is undisputed that RMP did not have the authority to terminate Hopper's employment. SUMF at ¶ 25. It is also undisputed that Ryder, an independent contractor not employed by RMP, made the decision to terminate Hopper's employment. SUMF at ¶ 76. Since Ryder was responsible for the adverse action against Hopper, there can be no claim of retaliation against RMP for Ryder's independent act. Thus, Hopper cannot establish that her opposition to RMP's conduct was the 'but-for' cause of Ryder's decision to terminate her employment. *Ward*, 772

F.3d at 1203 (requiring that such evidence "must be based on more than mere speculation, conjecture, or surmise.").

If Hopper were able to establish a prima facie case of retaliation under Title VII, a legitimate, non-discriminatory reason for the termination has been asserted. Ryder terminated Hopper because he believed that she had inappropriately accessed his email and obtained documents including emails sent to RE/MAX Properties management by the company's attorney. SUMF at ¶¶ 70-75. Hopper cannot demonstrate that Ryder's reasons for terminating her employment were pretext for retaliation. In the absence of other evidence, the Tenth Circuit has refused to allow even "'very close temporal proximity to operate as a proxy for the evidentiary requirement" that the plaintiff demonstrate pretext. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1172 (10th Cir. 2006) (*quoting Annett v. Univ. of Kan*., 371 F.3d 1233, 1241 (10th Cir. 2004)); *Medina v. Income Support Div*., 413 F.3d 1131, 1138 (10th Cir. 2005) ("[Temporal proximity] is not alone sufficient to defeat summary judgment."). Because Hopper has no circumstantial evidence of a retaliatory motive other than temporal proximity, she has failed to create a fact issue as to pretext and RMP should be granted summary judgment on her retaliatory termination claim under Title VII.

RMP should be granted summary judgment on Hopper's claim that RMP opposed her claim for unemployment benefits as additional retaliation because there is no evidence whatsoever to support that claim. Hopper herself admits that she has no knowledge of the position RMP took in response to her claim for unemployment benefits, and also admits that the Colorado Department of Labor and Employment refused to allow her to bring a claim for benefits against RMP. SUMF at ¶¶ 77-78. As Hopper has no evidence to support this retaliation

claim, and admits it was the Colorado Department of Labor and Employment that prevented her claim from proceeding, not RMP, summary judgment is appropriate.

### Conclusion

For the reasons set forth above, Defendant RE/MAX Properties, Inc. respectfully requests that the Court enter judgment as a matter of law in its favor on Plaintiff's claims, and that it be awarded its costs, attorney fees, and such other and further relief as the Court deems appropriate.

Respectfully submitted this 21st day of July, 2016.

CORNISH & DELL'OLIO, P.C.

s/ Ian D. Kalmanowitz
Ian D. Kalmanowitz, # 32379
Cornish & Dell'Olio, P.C.
431 N. Cascade Avenue, Ste. 1
Colorado Springs, CO 80903
PHONE (719) 475-1204
FAX (719) 475-1264
Email: ikalmanowitz@cornishanddellolio.com
Attorneys for Defendant RE/MAX Properties, Inc.

### CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of July, 2016 , I electronically filed with the Clerk of Court using the CM/ECF system a true and correct copy of the foregoing **Defendant RE/MAX Properties, Inc.'s Motion for Summary Judgment** was sent by email:

Jennifer Robinson, Esq.
Robinson & Associates
3300 S. Parker Road, Suite 330
Aurora, CO 80014
Telephone: (303) 872-3063
jrobinson@raemployment.com

s/Ian Kalmanowitz
Ian Kalmanowitz